IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2016

**MICHAEL FIELDS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County**
**No. C63, 643     R. Jerry Beck, Judge**

---

**No. E2015-01850-CCA-R3-PC – Filed September 29, 2016**

---

The Petitioner, Michael Fields, appeals the Sullivan County Criminal Court's denial of post-conviction relief from his convictions for reckless homicide, felony murder, two counts of especially aggravated burglary and especially aggravated robbery. On appeal, the Petitioner argues that he received ineffective assistance of counsel at both the trial and appellate level, and that, in light of these errors, his effective sentence of life plus forty years in incarceration is illegal. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined, and ROBERT H. MONTGOMERY, JR., J. (not participating).

Randall D. Fleming, Kingsport, Tennessee, for the Petitioner, Michael Fields.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Barry P. Staubus, District Attorney General; and Teresa A. Nelson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This post-conviction appeal arises from a 2004 robbery of the Ballis Tourist Home in Kingsport, Tennessee, wherein three residents were stabbed, resulting in the death of one of them. For this offense, the Sullivan County Grand Jury indicted the Petitioner in October of 2006 for first degree premeditated murder in count one, felony murder in count two, two counts of especially aggravated burglary in counts three and five, and especially aggravated robbery in count four. After a jury trial, the Petitioner was convicted of the lesser included offense of reckless homicide in count one, and convicted as charged on the remaining counts. The trial court merged the reckless homicide and

felony murder convictions in counts one and two and imposed a mandatory life sentence. The trial court also imposed concurrent twenty-year sentences for each of the two counts of especially aggravated burglary which were ordered to run consecutively to a twenty-year sentence for especially aggravated robbery in count four. In sum, the Petitioner received a total effective sentence of life plus forty years. This court affirmed the convictions on direct appeal. See State v. Michael David Fields, No. E2011-02485-CCA-R3-CD, 2013 WL 3497648 (Tenn. Crim. App. July 11, 2013), perm. app. denied (Tenn. Dec. 11, 2013).

On May 22, 2014, the Petitioner filed a pro se petition for post-conviction relief alleging, inter alia, judicial misconduct, prosecutorial misconduct, and several grounds of ineffective assistance of counsel. After the appointment of counsel, an amended petition was filed on May 6, 2015. A hearing took place on July 2, 2015, and the post-conviction court subsequently entered an order denying relief on all grounds on July 9, 2015.

**Post-Conviction Hearing.** At the beginning of the hearing, the Petitioner moved to disqualify the District Attorney, Barry Staubus, from participating because he had been the lead prosecutor in the Petitioner's unrelated homicide case.[1] The post-conviction court denied the Petitioner's motion. Prior to the presentation of proof, the trial court engaged in a protracted discussion with counsel concerning the scope of the Petitioner's argument regarding the introduction of a set of "transparencies" during the Petitioner's trial. Because the Petitioner raises several issues involving these transparencies, some background information is necessary. The State provided the following explanation of the transparencies at the hearing:

> [O]n the date that the murder was committed there was a video from a church directly across the street from the parking lot. That video captured the truck driven by the [Petitioner]. And the Kingsport Police Department secured that video; and as a result of obtaining the video, they were able to make still [images] of the truck that was in the parking lot at the time of the murder. From those still photos, Detective Cole made a transparency from that still photo that came from the video.
>
> . . .

---

[1] Prior to the commencement of the trial in the underlying case, the Petitioner was tried in a separate homicide case referred to throughout the record as the "Arbor Place" case. That trial resulted in a mistrial and, after being convicted in the underlying case here, the Petitioner was retried and convicted in that case as well. See State v. Michael David Fields, No. E2010-02446-CCA-R3-CD, 2013 WL 1803629 (Tenn. Crim. App. Apr. 30, 2013), perm. app. denied (Tenn. Sept. 11, 2013).

[A]bout two weeks later, when the [police] had taken possession of the [Petitioner's] truck, they brought the truck back driven by a [police] officer to the exact same location. The video from the church was running [just] as it was on the date of the murder. And they obtained that video and likewise obtained a still photo. And then from the still photo, Detective Cole made another transparency.

And so there were two transparencies: one on the date of the murder, and then one on November the 9th, which was approximately two weeks later. Both of those were introduced at trial and were the subject of several pretrial motions.

Trial counsel testified that he was appointed to represent the Petitioner in the present case in 2004 and later the Arbor Place case in 2006. He represented the Petitioner in both cases for approximately two-and-a-half years until a conflict arose that required him to withdraw from the Arbor Place case. Trial counsel continued to represent the Petitioner in the present case through trial and on direct appeal.

Trial counsel testified that he received transparencies from Detective Cole purporting to show the Petitioner's truck and filed a motion to suppress their introduction at trial. In the motion, he argued that the transparencies were not of sufficient quality to allow the trier of fact to identify the Petitioner's vehicle. He also asked the court to disallow any opinion testimony from Detective Cole that the vehicle shown on the transparencies was in fact the Petitioner's truck. After a hearing, the trial court determined that the State could introduce the transparencies, but Officer Cole could not offer an opinion regarding what the transparencies showed. As the court stated:

I certainly agree that [Officer Cole] is not going to be allowed to take these photographs and say that this truck on this photograph is the same truck on this [second] photograph. The only thing he's going to be able to testify [to] is that, as I understand, there was a photograph from the surveillance cameras the night before [the offense] that pictured a truck. He can introduce that photograph and then he can say 'that when we found the [Petitioner's] truck we went back to the same camera and had that same camera photograph his truck and this is the photograph that depicts that,' but that's the extent of his testimony and it would be a jury question to determine whether or not they are similar to make that [conclusion.] But he's not going to say – he can't say that this is the same truck. Now certainly if [the defense] has evidence that says that for some reason the camera is not able to photograph two particular trucks on these particular occasions that could – could certainly limit his ability but he certainly can

-3-

at this time say, 'This is the photograph that was taken at the scene of the crime, this is a photograph that we've [later] taken of his truck.' So that's the extent of what he will be able to testify to.

Approximately one year later, trial counsel filed a motion to reconsider the court's previous ruling and submitted an affidavit from Professor Tilman, a professor of digital media at East Tennessee State University and one of the experts the State consulted when they were attempting to enhance the transparencies. A hearing on the motion to reconsider was held on May 22, 2009. At the hearing, Professor Tilman explained that the State initially asked him to enhance the still images captured from the video camera to the point that they could identify distinguishing characteristics of the truck they believed to be the Petitioner's. He was unable to enhance the transparencies sufficiently to identify the vehicle, "due to the quality and location of the camera." The court further inquired as to whether a person could lay one transparency over the other and form an opinion that the vehicles depicted in each were the same. Professor Tilman opined that the images were of insufficient quality to make that determination. At the conclusion of the testimony, the trial court stated that "the Court's ruling will stay the same."

When asked why he did not call Professor Tilman to testify about the transparencies at trial, counsel explained that it was a strategic decision he made primarily because he did not think Tilman would be persuasive to a jury. Trial counsel was concerned that calling Tilman would have opened the door for the State to offer rebuttal expert testimony, which he believed would have been devastating to the Petitioner's case.

Trial counsel was also questioned about his failure to introduce a video recording from a security camera attached to an AmSouth bank near the scene of the crime (the AmSouth Tape). The tape was received twelve days prior to trial, and it was stipulated that it did not show the Petitioner or his vehicle. Trial counsel testified that his request for a continuance based on this late disclosure was denied after the State agreed to stipulate to the authenticity of the tape. Additionally, trial counsel noted that the Petitioner opposed the continuance and wanted to proceed to trial. Ultimately, trial counsel explained that he decided not to introduce the tape because he did not think it had any probative value because it did not show the Petitioner or his vehicle.

Regarding the decision not to request a change of venue, trial counsel explained that he did not seek a change in venue because, in his experience, the alternative venue was frequently a more rural county, and he did not think the Petitioner would draw a more favorable jury from such a county. Trial counsel also explained that he did not consult with the Petitioner prior to deciding which issues to raise on direct appeal because he believed that he was in the best position to make that determination. He explained that

-4-

he only raised the speedy trial issue on appeal because he believed it was the Petitioner's strongest argument, and because he did not favor the "scatter-shot approach" of "just [raising] every particular issue," on appeal regardless of the strength of the arguments.

The Petitioner testified that he met with trial counsel and his investigator on multiple occasions leading up to trial, and that they had several conversations regarding potential witnesses. The Petitioner agreed that during voir dire, trial counsel and the trial court questioned jurors regarding whether they had knowledge of the Arbor Place case. Regarding the transparencies, the Petitioner stated that he and trial counsel had discussed them, and that trial counsel had explained he did not think they should be admissible at trial. After losing the motion to suppress, trial counsel explained that he did not want to call Professor Tilman at trial because it would open the door for the State's expert to testify in rebuttal.

Following the hearing, the post-conviction court entered an order denying the petition. In denying relief, the post-conviction court specifically found that the Petitioner had failed to prove that he received ineffective assistance of counsel, failed to prove his allegations of judicial and prosecutorial misconduct, and failed to show that his sentence was illegal. This timely appeal follows.

## ANALYSIS

On appeal, the Petitioner asserts that he was denied effective assistance of trial and appellate counsel in several respects. The Petitioner specifically alleges that counsel was ineffective for failing to: (1) object during the State's closing argument; (2) seek a change of venue; (3) call certain witnesses at trial; (4) introduce the AmSouth tape at trial; (5) raise additional grounds on direct appeal. He further avers that he is entitled to relief based on the cumulative errors of counsel both at trial and on appeal. He additionally claims that the State committed prosecutorial misconduct by their delayed disclosure of the AmSouth tape. Finally, he argues that in light of these errors his sentence is illegal. The State responds that the post-conviction court properly denied relief on all grounds. Upon review, we agree with the State.

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence;

moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

**I. Ineffective Assistance.** In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that, "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. The Tennessee Supreme Court has reiterated:

> "Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When the judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel."

Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (quoting Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1971)).

**(1) Introduction of the Transparencies.** The Petitioner asserts three arguments related to the introduction of the transparencies at his trial. First, he argues that the State committed prosecutorial misconduct when it argued that the vehicle shown on the transparencies was the Petitioner's truck. Second, he argues that trial counsel was ineffective for failing to object to the State's closing argument. Finally, he argues that the trial court committed judicial misconduct by failing to issue a curative instruction after the State's closing argument. We address each contention in turn. However, we note that, both at the post-conviction hearing and in his brief to this court, the Petitioner conceded that his arguments regarding judicial and prosecutorial misconduct revolve around the introduction of the transparencies at trial and counsel's failure to object to the same. Accordingly, we will address his allegations of misconduct solely within the context of his ineffective assistance of counsel claim.

In support of his claims of prosecutorial misconduct and ineffective assistance of counsel, the Petitioner argues that counsel was ineffective for failing to object to the following portion of the State's closing argument:

> Detective Cole told you about what the Kingsport Police Department did on November 10 of 2004. And you saw that video as well. Ladies and gentleman, that video – the two videos, you've looked at them. You've seen them. You've seen the Defendant's truck. You've also seen the transparencies. That's the Defendant's truck. You saw it. That is the Defendant's truck on 11-10-04, and that's his truck on October the 26th of 2004. And you can look at those things if you need to. They're there. They're the exhibits.

When considering prosecutorial misconduct as a basis for ineffective assistance, a Petitioner must first demonstrate that prosecutorial misconduct occurred. Michael Lee McCormick v. State, No. 03C01-9802-CR-00052, 1999 WL 394935, at *18 (Tenn. Crim. App., at Knoxville, June 17, 1999) (citing State v. Pulliam, 950 S.W. 2d 360, 367 (Tenn. Crim. App. 1996)). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of discretion. Id. After a finding of prosecutorial misconduct, the reviewing court must then determine whether the failure to object to the conduct deprived the defendant of effective assistance of counsel. McCormick, 1999 WL 394935, at *18 (citing Coker v. State, 911 S.W.2d 357, 371 (Tenn. Crim. App. 1995), superseded on other grounds by rule, Tenn. Sup. Ct. R. 28, § 3(B) as recognized in State v. West, 19 S.W.3d 753 (Tenn. 2000)).

Here, we need not consider whether counsel was ineffective for failing to object during the State's closing argument because the Petitioner has failed to prove that prosecutorial misconduct occurred. In the order denying relief, the post-conviction court determined that the trial court admitted the transparencies "leaving the jury to draw their own conclusions," and therefore "it would not be error for the district attorney to comment or state inferences [that] the jury could or should draw from the evidence." After a thorough review of the record, we agree with the post-conviction court's analysis that "the express intent of [the trial court]" was to "allow[] the transparencies to be introduced to the jury and for the jury to draw any conclusion as to what they showed." The Petitioner has failed to show that the State committed prosecutorial misconduct in their closing argument, and therefore counsel was not ineffective for failing to object.

Regarding the Petitioner's claim of judicial misconduct for failing to issue a curative instruction after the State's closing argument, we initially note that this issue is waived for failure to raise it on direct appeal. See T.C.A. § 40-30-206(f), (g); Fred Edmond Dean v. State, No. E1998-00135-CCA-R3-PC, 2000 WL 337552, at *2 (Tenn.

Crim. App. Mar. 21, 2000), aff'd, 59 S.W.3d 663 (Tenn. 2001). Moreover, in light of our determination that the State did not commit misconduct by arguing that it was the Petitioner's vehicle shown on the transparencies at trial, we also conclude that it was unnecessary for the trial court to issue a curative instruction based on the same argument. Although the trial court's ruling regarding the use of the transparencies was admittedly confusing, the post-conviction court properly determined that the Petitioner was not entitled to relief based on their introduction at trial or the arguments surrounding them during the State's closing.

**(2) <u>Failure to Request a Change of Venue</u>.** The Petitioner next asserts that trial counsel was ineffective for failing to request a change in venue. He argues that he was unable to receive a fair trial in Sullivan County because of the amount of media coverage surrounding both this case and the Arbor Place case and that trial counsel was deficient in failing to seek a change in venue or request an out-of-county jury pool. The State responds that the court properly determined that trial counsel was not ineffective for failing to seek a change in venue. We agree with the State.

A change in venue can be granted upon a showing of undue excitement or any other cause that is likely to result in an unfair trial. <u>See</u> Tenn. R. Crim. P. 21. However, the failure to seek a change in venue will not establish ineffective assistance of counsel absent a showing of prejudice. <u>Adkins v. State</u>, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Additionally, "allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." <u>Taylor v. State</u>, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

In denying relief, the post-conviction court noted that the trial court conducted a "slow and deliberate" voir dire and determined that "the questioning by the attorneys insured a fair trial and a qualified jury." Our review of the record does not preponderate against that finding. At the post-conviction hearing, trial counsel testified that the general practice in Sullivan County was to first attempt to pick a jury from the available panel, and if unable to select a fair and impartial jury from that panel to then seek a change in venue. Because trial counsel was able to select a jury he felt was fair and impartial from the first panel, he decided not to seek a change in venue. Moreover, trial counsel testified that in his experience the alternative venue was usually a more rural East Tennessee county, and he did not think that the Petitioner would draw a more favorable jury in such a county. The Petitioner "cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." <u>Adkins v. State</u>, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Nor will we second guess trial counsel's strategy on this issue. <u>See</u> <u>State v. Burns</u>, 6 S.W.3d 453, 462 (Tenn. 1999). Moreover, although there were several references to "media attention" surrounding the Petitioner's trial, the Petitioner failed to introduce any evidence that this attention was prejudicial to his defense.

Accordingly, the Petitioner has failed to show that trial counsel was ineffective for failing to request a change of venue, and he is not entitled to relief.

**(3) Failure to Call Professor Primus Tilman at Trial.**[2]  Next, the Petitioner asserts that trial counsel was ineffective for failing to call Professor Primus Tilman as an expert witness at trial.  The Petitioner asserts that Professor Tilman could have testified that the transparencies were not of sufficient quality to allow for the identification of the Petitioner's vehicle.  To prevail on an ineffective assistance of counsel claim based on the failure to call a particular witness at trial, the Petitioner must present that witness at the post-conviction hearing.  Black v. State, 794 S.W.2d 752, 757.  The post-conviction court must then determine whether the testimony of that witness "would have been (1) admissible… and (2) material to the defense."  Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008).  Even if the testimony is admissible, trial counsel is not deficient for failing to call that witness if it would not have "materially aided the petitioner's defense."  Id.

Here, the Petitioner failed to call Professor Tilman to testify at the post-conviction hearing.  Ordinarily, this would necessitate waiver of the issue.  See Black, 794 S.W.2d at 757.  However, because Professor Tilman's testimony from the suppression hearing was introduced as an exhibit at the post-conviction hearing, we have reviewed the merits of the Petitioner's claim as to this issue and determined that he is not entitled to relief.  At the post-conviction hearing, trial counsel, whose testimony the post-conviction court credited, testified that his primary reason for not calling Professor Tilman was because he did not think a jury would find his explanation of the transparencies persuasive:

> From what I heard at the [suppression] hearing, my considered conclusion was: This is not an issue that we can bring up at trial, you know.  [Tilman] is not going to be able to persuade these folks not to believe their own eyes.  I saw no benefit in [calling Tilman as a witness].  We'd raised the issue.  We objected to it.  We filed motions, apparently and briefs, and motions to reconsider in litigating the issue.

Moreover, trial counsel explained that he was also concerned that calling Professor Tilman would open the door to the State calling a rebuttal expert witness that had previously been excluded.  He explained that the State's rebuttal witness "would have been devastating to [the Petitioner's] case."  Additionally, counsel described Professor Tilman's testimony regarding the quality of the transparencies as the type of nuanced,

---

[2] In his brief to this court, the Petitioner also asserts that trial counsel was ineffective for failing to call Charles Elbell as a witness at trial.  The Petitioner did not raise the failure to call this witness in his amended petition for post-conviction relief, nor did Mr. Elbell testify at the post-conviction hearing.  The issue is therefore waived.  See Tenn. R. App. P. 36(a); Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

-10-

scientific testimony that might be persuasive to a judge attempting to determine a legal issue, but would not be persuasive to a jury trying to determine an issue of fact. Based on these findings, the post-conviction court determined, and we agree, that "trial counsel made a well-reasoned strategic decision not to call Professor Tilman." The Petitioner is not entitled to relief on this issue.

**(4) Failure to Introduce the AmSouth Tape**. Next, the Petitioner contends that trial counsel was ineffective for failing to introduce the AmSouth tape at trial. The tape was recorded on the day of the offense, October 26, 2004, and consisted of a security camera recording from the side of an AmSouth bank located on the main road between the Ballis Tourist Home and Yuma, Virginia. Although not contained in the record on appeal, the video purportedly captured a fifteen minute period between 12:15 and 12:30 p.m., and showed vehicles passing the bank. It was stipulated that the video did not show the Petitioner or his vehicle. The Petitioner alleges that the fact that his vehicle was not depicted in the video is favorable to him because it conflicts with the State's timeline of the murder and further supports the alibi testimony presented at trial. He argues, therefore, that trial counsel was ineffective for failing to introduce it.

At the post-conviction hearing, trial counsel explained that he decided not to introduce the AmSouth tape at trial because it did not show the Petitioner's vehicle and therefore had no probative value. In denying relief, the post-conviction court reached the same conclusion and determined that trial counsel was not ineffective for failing to introduce the tape. Upon review, the record supports the finding of the post-conviction court. According to the timeline presented by the State at trial, the crime occurred sometime between 11:50 and 12:00 p.m. on October 24, 2006. Two witnesses for the defense testified that the Petitioner was in Yuma, Virginia, during two separate periods of time on the day of the offense. The first witness was the Petitioner's cousin, Larry White, who testified that the Petitioner visited with him for a "couple of hours" during the morning of October 24, 2006. White claimed that the Petitioner left at approximately 11:00 a.m., but admitted that he was not certain because he left before the Petitioner did. Another witness, Margaret Roberts, testified that the Petitioner came to her office at Yuma Tire and Recapping between 1:00 and 1:30 p.m. that same day. Additionally, Detective Cole testified that he had driven the route from the Ballis Tourist Home to Yuma, Virginia, and it consisted of 6.6 miles and took him a total of twelve minutes. Finally, the Petitioner admitted at the post-conviction hearing that no witness placed him in Yuma or travelling to Yuma during the time frame the offenses were alleged to have been committed. Based on these facts, we conclude that counsel made a reasonable decision not to introduce the AmSouth tape because it would not have supported the Petitioner's alibi defense.

Given that the AmSouth tape lacked probative value, we also conclude that the

-11-

Petitioner has failed to establish that he suffered prejudice as a result of the State's disclosure of the AmSouth tape twelve days prior to trial. Importantly, trial counsel testified that he requested a continuance based on the AmSouth tape so that he could locate a custodian of records from AmSouth bank to authenticate the video should he decide to enter it into evidence. When the State agreed to stipulate to the authenticity of the video, the continuance was no longer necessary and his request was denied. Moreover, trial counsel and the Petitioner both testified at the post-conviction hearing that the Petitioner opposed a continuance and wanted to proceed to trial. Accordingly, the Petitioner has failed to show that he suffered prejudice from the State's delayed disclosure of the AmSouth tape or that counsel was ineffective in failing to introduce it at trial. He is not entitled to relief.

**(5) <u>Failure to Raise Additional Issues on Direct Appeal.</u>** The Petitioner argues that counsel was ineffective for only raising one issue, the violation of the Petitioner's right to a speedy trial, in his direct appeal. The State responds that the decision to raise only one issue on appeal was a strategic decision that this court should not second guess. We agree with the State.

The same principles that apply to determining whether trial counsel was ineffective apply when determining the effectiveness of appellate counsel. <u>Campbell v. State</u>, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful. <u>See e.g.</u>, <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000). "If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue,… the reviewing court must determine the merits of the issue." <u>Carpenter v. State</u>, 126 S.W.3d 879, 887 (Tenn. 2004). If an issue has no merit or is weak, counsel's performance will not be deficient for failure to raise it, and the petitioner will have suffered no prejudice. <u>Id.</u> Appellate counsel is not constitutionally required to raise every conceivable issue on appeal, and the determination of which issues to raise is generally within counsel's sound discretion. <u>Id.</u> The Tennessee Supreme Court has adopted a non-exhaustive list of factors for determining whether trial counsel was deficient for failing to raise an issue on direct appeal:

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?

6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy, and if so, were the justifications reasonable?
7) What was the appellate counsel's level of experience and expertise?
8) Did the petitioner and appellate counsel meet and go over possible issues?
9) Is there evidence that counsel reviewed all of the facts?
10) Were the omitted issues dealt with in our assignments of error?
11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Id. at 888 (citing Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999)).

Initially, we observe that the Petitioner has failed to identify, or support with argument, the particular issues he claims should have been raised on direct appeal. Rather, his argument on this issue consists of merely reciting the issues raised in the motion for new trial, noting that only the speedy trial issue was raised on direct appeal, and noting that the post-conviction court determined that counsel was not ineffective in failing to raise additional issues on direct appeal. Review of this issue is further complicated by the fact that the Petitioner fails to allege specific grounds that should have been raised on direct appeal in his amended petition for post-conviction relief. Rather, the petition summarily states that trial counsel's "failure to present the entirety of issues alleged in the Motion for New Trial for appellate review constitutes ineffective assistance." Later, in the Amended Petition, the Petitioner claims that:

> Trial counsel only alleged in his brief that the Petitioner was denied a speedy trial. While the issues of ineffective assistance of counsel are generally raised in post-conviction proceedings, the entirety of the Petitioner's claims alleged in the Motion For New Trial were not exclusive of trial counsel's performance as many of the allegations could have been submitted on appeal and alleviated in subsequent proceedings.

To the extent that the Petitioner claims that trial counsel was ineffective for failing to raise all of the grounds that were raised in the motion for new trial on direct appeal, the record shows that the Petitioner failed to specify, develop, or offer evidence that counsel was ineffective in failing to raise those issues according to the factors delineated in Carpenter. Moreover, he failed to argue or demonstrate which, if any, of those claims would have succeeded had they been presented on appeal, as required to prove deficient performance and prejudice for an ineffective assistance claim. Carpenter, 126. S.W.3d at 887-88. Because he has failed to support his claim with argument or supporting authority, the issue is waived. See Tenn. R. Crim. P. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); Tenn. R. App. P. 27(a)(7) (A brief shall contain

-13-

"[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record... relied on."); see also State v. Schaller, 97 S.W.2d 313, 318 (Tenn. Crim. App. 1997) (citing State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987)).

Waiver notwithstanding, the record does not preponderate against the post-conviction court's determination that trial counsel was not ineffective for failing to raise additional issues on appeal. At the post-conviction hearing, counsel testified that he only raised the speedy trial issue because he felt it was the Petitioner's strongest argument, and he did not want to detract from the strength of that argument by including other, less viable, grounds for relief. This court will not second guess that decision, and the Petitioner is not entitled to relief.

**(6) Cumulative Error.** Finally, the Petitioner contends that he is entitled to relief based on the cumulative errors of counsel. "To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings." State v. Hester, 324 S.W.3d 1, 77 (Tenn. 2010). Having determined that trial counsel was not ineffective based on any of the grounds raised by the Petitioner, he is not entitled to relief under the cumulative error doctrine.

**II. Sentence.** In his final issue on appeal, the Petitioner argues that his sentence is illegal in light of the above-claimed errors. However, the Petitioner failed to raise this issue in his amended petition for post-conviction relief and did not argue the illegality of his sentence at the post-conviction hearing. Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."); See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."). Moreover, in his brief to this court, the Petitioner again fails to support this claim by argument, supporting authority, or citations to the record. As previously noted, Tennessee Court of Criminal Appeals Rule 10(b) states that "issues which are not supported by argument, citation to authorities or appropriate references to the record will be treated as waived in this court." State v. Brock, 327 S.W.3d 645, 696 (Tenn. Crim. App. 2009). Moreover, a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented and the reasons therefore, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." See Tenn. R. App. P. 27(a)(7). Having failed to comply with this basic rule, the issue is waived. State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). Waiver notwithstanding, we note that the Petitioner's sentence of life imprisonment was mandatory based on his conviction for first degree felony murder. See

-14-

T.C.A. 39-13-202(c).  Moreover, his two twenty-year sentences for each count of especially aggravated burglary were within their applicable ranges.  See T.C.A. §§ 39-14-404(c); 40-35-112(b)(2).  The Petitioner is not entitled to relief.

## **CONCLUSION**

Pursuant to the foregoing reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____

CAMILLE R. McMULLEN, JUDGE